IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| COREY A. BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-00966-MJR |
| | ) | |
| MICHAEL WILLIAMS, | ) | |
| SHAWNEE CORRECTIONAL CENTER, | ) | |
| and ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Corey Brooks filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, in order to challenge the lack of approval of religious services that conform with the tenets of his religion and the denial of his request for a certain religious text by Shawnee Correctional Center ("Shawnee"). (Doc. 1). He sues Michael Williams (Chaplain at Shawnee), Shawnee Correctional Center, and the Illinois Department of Corrections ("IDOC") for injunctive relief only. (Doc. 1, pp. 7-8).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Upon review of the allegations, the Court finds that the Complaint survives preliminary review under § 1915A.

## The Complaint

Given Plaintiff's *pro se* status, the Court will construe his Complaint liberally. *See Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014). Plaintiff is a recent convert to Rastafarianism. (Doc. 1, p. 5). According to the Complaint, he seeks to learn more about and practice his religion through reading certain religious texts, including the "holy Piby" by Robert Rogers, and participating in a Sabbath service on Fridays and Saturdays, which Plaintiff also calls his holy Piby. (Doc. 1, pp. 5-6). Though prison officials granted Plaintiff's request for a religious diet in May of 2016, his June 19, 2016 grievance regarding his request to the chaplain for Sabbath services had not been approved or denied, and was presumably still "under review" as of August 24, 2016 when he signed his Complaint requesting injunctive relief to mandate such services. (Doc. 1, pp. 5, 9-10).

Plaintiff further contends that, despite Rastafarians not being granted the opportunity to have Sabbath services, there is a well-known religion that is allowed to have such services at Shawnee. (Doc. 1, pp. 5, 9-10). In support of this contention, Plaintiff has included with this Complaint a "Chaplaincy Service Quick Intake" form that evidences that there are no Rastafari services offered and, furthermore, that there are services offered on Fridays and Saturdays for other religions, including Islam, Mennonite, Pentecostal, and Christian. (Doc. 1, p. 17). In connection with these claimed deprivations, Plaintiff now seeks injunctive relief against the defendants. (Doc. 1, pp. 7-8).

## Merits Review Under 28 U.S.C. § 1915A

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the

Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint into the following enumerated counts:

> **Count 1:** Defendants denied Plaintiff access to Rastafari Sabbath services in violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1(a));
>
> **Count 2:** Defendants denied Plaintiff access to a holy Piby religious text in violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1(a)); and
>
> **Count 3:** Defendants denied Plaintiff equal protection of the law guaranteed under the Fourteenth Amendment and violated the Establishment Clause of the First Amendment when treating his request for Sabbath services differently than identical requests of members of other religions.

### Discussion

**Counts 1 and 2 – Free Exercise and RLUIPA Claims**

The First Amendment's Free Exercise Clause prohibits prison officials from imposing a substantial burden on the free exercise of religion, unless the burden is reasonably related to a legitimate penological interest. *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). The Religious Land Use and Institutionalized Persons Act ("RLUIPA") offers even broader protections than the First Amendment. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). RLUIPA applies to state and local governments and to those acting under color of state law. *See* 42 U.S.C. § 2000cc-5(4). It offers broad protection to institutionalized persons by prohibiting substantial burdens on their religious exercise. § 2000cc-3(g). This protection extends to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). The First Amendment and RLUIPA claims in Count 1 shall be allowed to proceed. The claims in Count 2, however, shall be dismissed.

With respect to Count 1, Plaintiff claims that Rastafarian Sabbath services are not approved at Shawnee despite his requests for them and his desire to participate in them to learn more about his religion. At this early stage, there is no indication that preventing such services is related to a legitimate penological interest. This is enough to state a claim under the First Amendment Free Exercise Clause and RLUIPA.

Because Plaintiff is only seeking injunctive relief, his First Amendment and RLUIPA claims should only proceed against the individuals that "would be responsible for ensuring that any injunctive relief is carried out" whether or not the individual(s) personally participated in the underlying statutory or constitutional violations. *Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). When construed at the far edge of liberality, the Complaint implies that Williams would be responsible for carrying out the specific relief requested in holding a Sabbath service for Rastafarians on Fridays and Saturdays. Further, because Plaintiff is seeking injunctive relief that will need to be implemented at Shawnee, the Warden of Shawnee will also be added as a defendant under Count 1 in place of Shawnee, as he or she undoubtedly will be capable of addressing and remedying any unconstitutional policies or practices at Shawnee. *See* FED. R. CIV. P. 21; FED. R. CIV. P. 17(d);[1] *Gonzalez v. Feinerman,* 663 F.3d at 315.

Because Williams and the Warden of Shawnee are the appropriate defendants for the First Amendment and RLUIPA claims for injunctive relief in Count 1, Plaintiff shall be allowed to proceed with these claims against them. The claims in Count 1 shall be dismissed without prejudice as against IDOC and Shawnee.

With respect to Count 2, it is not entirely clear whether Plaintiff is asking this Court to

---

[1] Federal Rule of Civil Procedure 21 states in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 17(d) provides: "A public officer who . . . is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added."

4

grant him injunctive relief to mandate his access to the holy Piby text. Plaintiff's Complaint does not include such a request in his request for relief. However, this Court must construe the Complaint liberally, and Plaintiff expressed a desire to learn about his religion by obtaining the holy Piby which, per his allegations, he has thus far been denied. Giving Plaintiff the benefit of the doubt, this Court reads a request for injunctive relief into the Complaint, which requires Plaintiff to be provided with the holy Piby text, and denies it.

To state a claim upon which relief can be granted, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 590 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

Plaintiff's Complaint, while expressing a desire to have the holy Piby to study Rastafarianism and disgruntlement at Shawnee's failure to provide it to him, fails to indicate whether Shawnee has done wrong in any way in not providing it, whether he expects to have the text purchased for him by Shawnee, whether he intends to purchase it with his own money once it is procured by Shawnee officials, or whether he foresees himself gaining possession of it in some other way, like through a prison religious text collection. Plaintiff has also not indicated that there is any discrepancy in the texts provided to Rastafarianism as compared to other religions. Without any allegations beyond Plaintiff having written to request the holy Piby by

Robert Rogers and not having received it yet due to lack of materials, this Court cannot infer that the defendants are liable. This result is particularly clear in this case because a prison is generally not required to pay for an inmate's religious accessories and other devotional materials, and that is exactly what Plaintiff appears to be requesting. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.8 (2005) (citing *Charles v. Verhagen*, 348 F.3d 601, 605 (7th Cir. 2003) (overturning a prison prohibition on the possession of prayer oil, but placing the responsibility for purchasing the oil on the prisoner)). For these reasons, Count 2 shall be dismissed without prejudice.

**Count 3 – Equal Protection and Establishment Clause**

Count 3 presents a colorable claim under the Establishment Clause of the First Amendment and the Fourteenth Amendment's Equal Protection Clause. Construing the Complaint liberally, Plaintiff alleges that his request for Sabbath services was treated differently because of his religion. "The Establishment Clause may be violated even without a substantial burden on religious practice if the government favors one religion over another (or religion over nonreligion) without a legitimate secular reason for doing so." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (citing *Kaufman v. McCaughtry,* 419 F.3d 678, 683 (7th Cir. 2005)). Similarly, the Fourteenth Amendment Equal Protection Clause forbids a state to "deny to any person within its jurisdiction the equal protection of the laws," thereby prohibiting discrimination and requiring the evenhanded treatment of all religions. U.S. CONST. amend. XIV, § 1. The Seventh Circuit has explained:

> In providing [inmates the] opportunity [to practice their religion], the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same

degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Al–Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted).

Allegations in the Complaint suggest that Plaintiff's requests for Sabbath services were treated differently at Shawnee because of his religion. This gives rise to colorable Establishment Clause and Equal Protection claims. Because all Plaintiff seeks in his Complaint is injunctive relief, the appropriate defendants, for the same reasons as in Count 1, are Williams and the Warden of Shawnee. *See* FED. R. CIV. P. 17(d), 21; *Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011). IDOC is not mentioned in connection with Plaintiff's discussion of the disparate treatment of religions, and the alleged unconstitutional practices appear from the Complaint to be limited to Shawnee, so IDOC will be excluded as a defendant from Plaintiff's Equal Protection and Establishment Clause claims. Therefore, Count 3 will proceed against Williams and the Warden of Shawnee and will be dismissed as to all other defendants without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated above, **COUNTS 1** and **3** shall proceed against Defendant **WILLIAMS** and the **WARDEN OF SHAWNEE** (official capacity only), who the **CLERK** is directed to **ADD** as a defendant in this case so that he or she may respond to any injunctive relief that is granted.

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** without prejudice.

**IT IS ORDERED** that Defendants **SHAWNEE** and **IDOC** are **DISMISSED** without

prejudice because the Complaint fails to state a claim for relief against these defendants.

**AS TO COUNTS 1** and **3,** the Clerk of Court shall prepare for Defendants **WILLIAMS** and the **WARDEN OF SHAWNEE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings.  Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  December 12, 2016

<u>s/ MICHAEL J. REAGAN</u>
**Chief Judge**
**United States District Court**

9