# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **COREY BROOKS,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) ) Case No. 16-cv-966-MJR-SCW ) |
| **MICHAEL WILLIAMS and JEFFERY DENNISON (as Warden of Shawnee Correctional Center),** | ) ) ) ) ) |
| **Defendants.** | |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Corey Brooks filed his complaint against Michael Williams and Jeffery Dennison, as the Warden of Shawnee Correctional Center for violations of Plaintiff's rights under the Free Exercise Clause of the First Amendment, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a), equal protection under the Fourteenth Amendment, and his rights under the Establishment Clause of the First Amendment. Specifically, Plaintiff alleges that Defendants denied Plaintiff access to Rastafari Sabbath services (Count 1) and they treated his request for such services differently than identical requests of members of other religions (Count 3). This matter is before the Court on Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (Docs. 27 and 28). Plaintiff has filed a response (Doc. 30) in opposition to the motion.

The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c)**, **Federal Rule of Civil Procedure 72(b)**, and **Local Rule 72.1(a)**. The undersigned held a hearing on December 15, 2017. Based on the following, it is **RECOMMENDED** that the Court **DENY** Defendants' motion for summary judgment.

FACTUAL BACKGROUND

### A. Procedural Background

Plaintiff filed his complaint on August 29, 2016 against Defendants Jeffrey Dennison and Michael Williams (Doc. 1). As narrowed by the Court's threshold order, Plaintiff alleges that he is a recent convert to Rastafarianism and he seeks to participate in a Sabbath service on Fridays and Saturdays, which Plaintiff believes is part of his "Holy Piby" (Doc. 5, p. 2). Plaintiff also argues that while his access to Sabbath services has been denied, other well-known religions are allowed to have such services.

In response to Plaintiff's complaint, Defendants filed the pending motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies (Docs. 27 and 28). Plaintiff submitted a grievance dated June 19, 2016 regarding his religion (Doc. 28-4, p. 9-10). That grievance indicated that he wanted to learn more about being a Rastafarian and that his Sabbath is on Fridays and Saturdays (*Id*. at p. 9). The grievance notes that he wrote the chaplain about the Holy Piby written by Robert Rogers but he had not heard back from the chaplain (*Id*.). Plaintiff requested that he have the Holy Piby on Friday and Saturday (*Id*.). The grievance was responded to by the

counselor on July 7, 2016, indicating that the chaplain had received materials regarding Rastafarianism in the past weeks and the request is under review (*Id*.). The grievance is stamped as being received by the ARB on August 11, 2016 (*Id*.). The grievance was returned to Plaintiff for failing to attach the grievance officer and chief administrative officer response (*Id*. at p. 8).

Plaintiff submitted a second grievance dated August 24, 2016 regarding his religion (Doc. 28-4, p. 6-7). Although the grievance is dated August 24, 2016, Plaintiff signed that he submitted the grievance on August 31, 2016 (*Id.* at p. 6). That grievance alleges that Plaintiff was not provided with his religious meals but also indicates that he put in Sabbath requests for Friday and Saturday and his religious holidays (*Id*. at p. 7). Plaintiff requested to have his Sabbath on holidays and his proper religious meal (*Id*. at p. 6). The counselor responded to the grievance on September 7, 2016 noting that the grievance process was not the avenue to make religious requests (*Id*.). The grievance was received by the ARB on September 19, 2016 and returned for failing to attach a grievance officer or chief administrative officer response (*Id*. at p. 5). Plaintiff also submitted a grievance dated November 13, 2016 regarding his Sabbath request which he signed on November 16, 2016 (Doc. 28-4, p. 3-4). That grievance was received by his counselor on November 18, 2016 and returned to Plaintiff on December 6, 2016 (*Id*. at p. 3). Plaintiff's grievance officer received the grievance on December 5, 2016 and denied the grievance on December 7, 2016 (*Id*. at p. 2). The chief administrative officer signed off on the grievance on December 9, 2016 (*Id*.). The ARB received Plaintiff's grievance on

December 27, 2016 (*Id.* at p. 1, 3). The grievance was returned to Plaintiff for failing to identify the dates that he was denied Sabbath days (*Id.* at p. 1).

Plaintiff indicated in his response that he submitted the grievances but never got a response back from the grievance officer or chief administrative officer (Doc. 30, p. 1). Plaintiff indicated that Shawnee does not follow their institutional procedures so he submitted the grievances straight to Springfield (*Id.*). In light of this dispute of fact as to whether Plaintiff submitted his grievance to the grievance officer and never received a response, the Court set the matter for an evidentiary hearing pursuant to ***Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008).**

### B. *Pavey* Hearing

The Court held an evidentiary hearing on December 15, 2017. Prior to the hearing, Defendants supplemented their motion with a declaration from Harry Allard, clinical services supervisor who maintains the grievance logs at Shawnee Correctional Center (Doc. 36). Along with the affidavit, Defendants submitted the grievance logs from March to October 2016 (Doc. 36-1). There are no grievances on the log from Plaintiff.

Plaintiff, however, testified that he did submit his June 19, 2016 grievance to the grievance office. Plaintiff testified that he always had difficulties getting responses to his grievances while at Shawnee Correctional Center, both from his counselor and the grievance office. Plaintiff testified that he always sent kites to the grievance officer asking for the status of his grievance when he did not receive a response. Plaintiff

acknowledged that he received a response to his June 19, 2016 grievance but does not recall if he received the response back on July 7, 2016 or the day after. Once he received the grievance from his counselor, he filled out a request slip and mailed a copy of the grievance to the grievance officer asking for his copy. He did not get a response from the grievance officer. He sent repeated requests to the grievance officer and once the grievance officer did not respond to the first request, Plaintiff believed that the grievance officer would not respond at all. He then typed a two page letter indicating his attempts to obtain a response from the grievance officer and attached that letter to the grievance that he sent to the ARB. The ARB does not have record of that letter nor did Plaintiff attach that letter to his response or complaint. Plaintiff also acknowledged that he did not provide the Court with any copies of the letters he sent to the grievance officer.

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." ***Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's

exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If

and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800** *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. **20 Ill. Admin. Code §504.810(a).** The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(c).** Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. **20 Ill. Admin. Code §504.820(a).** The Grievance Officer will review the grievance and provide a written response to the inmate. **20 Ill. Admin. Code §504.830(a).** "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief

Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(e).** "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." **20 Ill. Admin. Code §504.850(a).** The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(d).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(e).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly

to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. **20 Ill. Admin. Code §504.840(b).** If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process. **20 Ill. Admin. Code §504.840(c).** When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." **20 Ill. Admin. Code §504.850(f).**

## ANALYSIS

Plaintiff submitted three grievances related to his religious claims: dated June 19, 2016, August 31, 2016, and November 16, 2016. Plaintiff's August 31, 2016 and November 16, 2016 were dated after he submitted his complaint on November 21, 2016, thus they cannot serve to exhaust his administrative remedies. Exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A prisoner must wait to bring a suit until he completes the exhaustion process. *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999)**

**(citing 42 U.S.C. § 1997e(a)).** As those grievances were not filed until after he filed his complaint, they do not exhaust Plaintiff's claims.

As to the June 19, 2016 grievance, Plaintiff testified that he submitted the grievance to the grievance officer and that he never received a response. If Plaintiff is believed, then his attempts at exhaustion would be deemed thwarted and he may proceed with his lawsuit. *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)).**

Here, Plaintiff testified that he submitted his grievance to the grievance officer and never received a response.[1] He also testified that he wrote letters to the grievance officer asking about the grievance and did not receive responses to those letters. After waiting

---

[1] The undersigned notes that Plaintiff testified he sent a request with a copy of his grievance asking for the grievance officer to show Plaintiff his copy of the June 19, 2016 grievance. It was not clear if Plaintiff meant he submitted the grievance at that time or sometime previously. Plaintiff's responsive brief also noted that there were irregularities in how Shawnee handled grievances. Plaintiff's November 16, 2016 grievance indicates it was returned by his counselor on December 6, 2016, but the grievance office indicates it received the grievance on December 5, 2016. This suggests that there might, indeed, be irregularities at Shawnee in that the counselor might forward grievances to the grievance office as that is the only way the undersigned can see that Plaintiff's November 16, 2016 grievance could have been received by the grievance office *before* the counselor returned it. This also supports Plaintiff's testimony that the grievance office had his June 19, 2016 grievance and he sent a request asking to be shown their copy.

a month for a response to either his grievance or the letters and hearing nothing, he submitted his grievance to the ARB. The undersigned finds nothing in the record to refute Plaintiff's testimony.[2] While there is no record of the grievance in the grievance logs, that does not mean that Plaintiff did not submit the grievance, only that it was not logged. The affidavit of clinical services supervisor Harry Allard indicates that some grievances, those submitted improperly, are not logged in the grievance logs (Doc. 36, p. 1). Further, there is no indication from the Defendants as to whether letters sent to the grievance office, such as Plaintiff's inquiries regarding his June 19, 2016 grievance, are logged by the grievance office. Nor is Plaintiff required to make copies of such letters as proof that he submitted inquiries. Thus, the absence of such letters in the record does not refute Plaintiff's testimony. The undersigned does note that Plaintiff testified that he submitted a two page letter to the ARB detailing his attempts to exhaust his June 19, 2016 grievance and there is no record of that letter with the ARB. But the undersigned finds that minor discrepancy alone does not cause the Court to disbelieve Plaintiff.

Further, there is no evidence in the cumulative counseling summary to refute Plaintiff's testimony. There is nothing in the summary regarding any of Plaintiff's grievances. It is this undersigned's experience that often, but not always, the counselor

---

[2] While the undersigned there is some discrepancy in the record as to whether Plaintiff submitted his June 19 grievance to the grievance office as he mentioned in his response that he submitted his grievances straight to Springfield and seemingly submitted his August 31, 2016 direct to the ARB (as he received the response back from the counselor on September 7 and the ARB received the grievance September 14), there is simply no evidence in the record before the Court to support the position that Plaintiff did not submit the grievance to the grievance office. Plaintiff was not cross-examined as to whether he submitted the later grievances to the grievance office or the ARB directly, and there was adequate time for Plaintiff to submit his June 19, 2016 grievance to the grievance office, not receive a response, and still forward it to the ARB on August 11, 2016, which he testified to doing.

will document grievances in the counseling summary, including the receipt of grievances, the return of grievances, an inmate's request for grievance forms, and the return of a grievance from the grievance office. Plaintiff's summary has none of these entries and it is clear from the record that the counselor did indeed return Plaintiff's June 19, 2016 grievance, yet the counselor failed to document that transaction in the summary. Thus, the lack of documentation in the summary regarding Plaintiff's attempt to submit his June 19, 2016 grievance to the grievance officer also has no effect on Plaintiff's credibility.

As such, all that the undersigned is left with is Plaintiff's testimony that he submitted his grievance to the grievance office and a lack of documentation in the record to suggest he did or did not submit said grievance. The burden of demonstrating that Plaintiff failed to exhaust his administrative remedies lies with the defense, and the undersigned finds that the defense failed to demonstrate that Plaintiff did not submit his June 19, 2016 grievance to the grievance office when Plaintiff testified that he did.

## CONCLUSION AND RECOMMENDATION

Accordingly, it is **RECOMMENDED** that the Court **DENY** Defendants' motion for summary judgment (Docs. 27 and 28).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g.,*

*Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Accordingly, Objections to this Report and Recommendation must be filed on or before **January 5, 2018.**

**IT IS SO ORDERED**.
DATED:	December 19, 2017.

	/s/ *Stephen C. Williams*
	STEPHEN C. WILLIAMS
	United States Magistrate Judge